Darcel and Lawrence FAUNTLEROY, Jr., Heather Matthews, Yvonnne and Norman Benjamin, Dallas Williams, Sheryl and Richard Lockskin, and Theresa and Laverne Hayden, Plaintiffs,

v.

Richard STASZAK, Individually and in his official capacity as Commissioner, Schenectady County Department of Social Services, Defendant.

No. 90–CV–424.

United States District Court,
N.D. New York.

May 1, 1998.

Greater Upstate Law Project, Albany, NY, for Plaintiffs; Susan C. Antos, of counsel.

Legal Aid Society of Northeastern New York, Albany, NY, for Plaintiffs; Lewis Steele, of counsel.

Ryan, Orlando & Smallacombe, Albany, NY, for Defendant; Claudia A. Ryan, of counsel.

### MEMORANDUM–DECISION and ORDER

McAVOY, Chief Judge.

Following settlement of the instant action brought under 42 U.S.C. section 1981, Plaintiffs now move for an order awarding attorneys' fees.

## I. BACKGROUND

Plaintiffs, represented by the Legal Aid Society of Northeastern New York, Inc., and the Greater Upstate Law Project, Inc., commenced this litigation in 1990 challenging Defendant's procedures for the issuance of certain public assistance benefits. On February 18, 1992, a consent decree settling the case was approved by the Court (the "Consent Decree").

The Consent Decree required periodic reporting by Defendant for three years concerning the timeliness of benefit applications. These reports contained detailed information regarding the number of applications for public assistance, food stamps, and Medicaid; the date the applications were filed; the date of interview; the date a determination was

made on the application; and, the date a check was issued. Defendant also was required, *inter alia*, to produce data showing the number of applications disposed of within thirty days of filing, broken down by the number of applications granted, denied, and withdrawn.

By consent of the parties, the terms of the Consent Decree were extended, with some modifications, three times until May, 1997. Plaintiffs' attorneys devoted significant hours monitoring Defendant's compliance with the Consent Decree, including reviewing the required reports and performing statistical analyses of the data provided. According to Plaintiffs, this monitoring was particularly necessary because Defendant's reports showed continued delays in the processing of public assistance applications.

Plaintiffs' attorneys now move the Court for an order awarding attorneys' fees for the time spent monitoring Defendant's compliance with the Consent Decree. They seek $75,735, broken down as follows:

*Greater Upstate Law Project*

Susan Antos: 109.8 hours at $150 per hour: $16,470

*Legal Aid Society of Northeastern New York*

Lewis Steele: 270.7 hours at $150 per hour: $40,605

Albert Jackson: 248.8 hours at $75 per hour: $18,660

## II. DISCUSSION

Defendant opposes Plaintiffs' fee application on the basis that (1) Plaintiffs are not prevailing parties, (2) Plaintiffs waived their right to request attorneys' fees, and (3) Plaintiffs' request is unreasonable.

### A. Prevailing Party

■ A plaintiff may be considered a prevailing party for attorneys' fees purposes "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quotation omitted). The "plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought ... or comparable relief through a consent decree or settlement." *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992).

Defendant argues that Plaintiffs are not prevailing parties because the Schenectady Department of Social Services merely agreed to abide by existing law. Defendant's argument misses the point. Law is not self-policing. Indeed, prior to the settlement of this case Defendant was arguably not in compliance with state and federal law. It is often incumbent upon individual plaintiffs, expending time and money, to seek judicial involvement to ensure compliance with civil rights law. Defendant's present argument, moreover, would preclude attorneys' fees in any case where a party is seeking to vindicate *preexisting* rights under federal and state law. Plainly, this is not the test for determining prevailing party status.

■ The key to determining whether a party prevails "is whether the litigation resulted in an alteration of the legal relationship between the parties." *Ass'n for Retarded Citizens of Connecticut, Inc. v. Thorne*, 68 F.3d 547, 552 (2d Cir.1995) (citing *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989)). "Victory can be achieved ... 'if the defendant, under pressure of the lawsuit, alters his conduct (or threatened conduct) towards the plaintiff that was the basis for the suit.'" *Marbley v. Bane*, 57 F.3d 224, 234 (2d Cir.1995) (quoting *Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987)).

■ The fact that a claim has been resolved by settlement, as in this case, does not preclude a finding that Plaintiffs are prevailing parties; "it is plain that a party may prevail when it vindicates rights—regardless of whether there is a formal judgment—through a settlement or consent judgment." *Wilder v. Bernstein*, 965 F.2d 1196, 1202 (2d Cir.1992); *Marbley*, 57 F.3d at 234 ("Securing an enforceable decree or agreement may evidence prevailing party status.").

Here, there is little doubt that Plaintiffs' were prevailing parties. The Consent Decree altered Defendant's conduct by requir-

ing that Defendant, *inter alia*, cease limiting the number of applications taken each day through pre-screening appointments, *see* Consent Decree ¶ 9, schedule eligibility appointments within five days, *see* Consent Decree ¶ 14(c), and screen all cases to determine eligibility for emergency public assistance, *see* Consent Decree ¶ 10.

 Furthermore, a fee award is not precluded because the services were rendered in an effort to secure compliance with a consent decree. "It is within the sound discretion of the district court to grant an award for services performed that are 'useful and of a type ordinarily necessary' to secure the final result obtained from litigation to enforce civil rights." *Vecchia v. Town of North Hempstead,* 927 F.Supp. 579, 581 (E.D.N.Y.1996). Services rendered in monitoring compliance under a consent decree are reimbursable. *See, e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986); *Diaz v. Romer,* 961 F.2d 1508, 1511–12 (10th Cir.1992); *Vecchia,* 927 F.Supp. at 581.

## B. Waiver

 Defendant argues that Plaintiffs are not entitled to an award of attorneys' fees because they waived these fees when they entered into the Consent Decree, which disposed of Plaintiffs' claims. Defendant concedes, however, that the Consent Decree is silent as to the waiver of fees.

 The Second Circuit has held that a settlement agreement using broad language to effect a mutual release of claims and accompanied by a stipulation that the case be dismissed "without costs to any party" "is, absent circumstances indicating otherwise, intended to settle all claims involved in the particular litigation, including a claim for at-

torney's fees." *Brown v. General Motors Corp.,* 722 F.2d 1009, 1012 (2d Cir.1983). As in any case involving a settlement, "it is the intent of the parties which governs." *Brown,* 722 F.2d at 1012.

In *Valley Disposal v. Central Vermont Solid Waste,* 71 F.3d 1053 (2d Cir.1995), the circuit clarified its prior holding by stating that "we reject the description of *Brown* as standing for the stark proposition that 'silence equals waiver.'" *Id.* at 1058. Instead, the circuit noted that "we found a waiver of attorneys' fees in *Brown* where the parties had entered into a settlement agreement that contained both a general release of claims and a stipulation of dismissal 'without costs to any party,' partly because 'costs' are commonly understood to include attorneys' fees." *Valley Disposal,* 71 F.3d at 1058 (quoting *Brown,* 722 F.2d at 1012).

Viewing the present Consent Decree in light of the Second Circuit's holdings in *Brown* and *Valley Disposal,* the Court concludes that Plaintiffs did not intend to waive their claim to attorneys' fees.[1] First, the Consent Decree does not purport to execute a "general release of claims" between the parties. *See Valley Disposal,* 71 F.3d at 1058. Second, the Consent Decree does not state in broad terms, or in any terms for that matter, that the settlement would be "without costs to either party." *See Brown,* 722 F.2d at 1012 (citing with approval cases finding no waiver "where the settlement agreement neither mentions fees nor purports to effect a general release of all claims against the defendant"). For these reasons, the Court cannot conclude that the Consent Decree manifested an unspoken intent to waive Plaintiffs' attorneys' fees.

## C. Attorneys' Fees

The Supreme Court has held that to determine the amount of "reasonable attorney's

---

1. Defendant also argues that Plaintiffs waived their right to attorneys' fees because they (1) did not put Defendant on notice of their intent to request fees and (2) waited until August 15, 1997, to file the present motion. As to Defendant's first argument, the law imposes no requirement that a party be put on notice that it may have to pay attorneys' fees; silence does not result in waiver. *Valley Disposal,* 71 F.3d at 1058. Rather, it was incumbent upon Defendant to seek a waiver of fees. It was Defendant's failure to address this issue at the time of settlement that should be criticized. As to Defendant's second argument, Plaintiffs filed the present fee application a mere three months after the final extension of the Consent Decree-which expired in May, 1997. Any application filed before the expiration of the Consent Decree would have resulted in unwarranted piecemeal fee litigation.

fees," the Court must first establish a "lodestar" figure by multiplying the number of hours reasonably expended by the party's attorneys by a reasonable hourly rate. *See Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The operative term is "reasonable."

### i. Lodestar Figure—Reasonable Rate

■ To determine the hourly rate, the Supreme Court has adopted a marketplace model, *Blum,* 465 U.S. at 896, 104 S.Ct. 1541. which contemplates "the normal rate in the legal community for substantially similar work by competent practitioners." *Fiacco v. Rensselaer,* 663 F.Supp. 743, 745 (N.D.N.Y. 1987); *see also Levy v. Scranton,* 1992 WL 265936 (N.D.N.Y.1992); *Auburn Enlarged City School District v. Coastal Environmental Safety and Control, Inc.,* 1990 WL 19139 (N.D.N.Y.1990). The district court also considers other rates that have been awarded in similar cases in the same district. *See, e.g., Miner v. City of Glens Falls,* 1992 WL 349668 (N.D.N.Y.1992), *aff'd,* 999 F.2d 655 (2d Cir.1993).

After reviewing cases in this district, the Court will apply the prevailing market rates found within the Northern District of New York in its calculation of an award of attorneys' fees as follows:

| Attorney | Type of Work | Hourly Rate |
|---|---|---|
| Partner | Legal | $150 |
| Associate | Legal | $100 |
| Paralegal | Legal | $ 75 |

*See, e.g., Abou–Khadra v. Bseirani,* 971 F.Supp. 710, 718 (N.D.N.Y.1997); *Equal Employment Opportunity Comm'n v. American Fed'n of State, County and Mun. Employees,* 1996 WL 663971 (N.D.N.Y.1996); *Haley v. Pataki,* 901 F.Supp. 85, 89 (N.D.N.Y.1995), *aff'd,* 106 F.3d 478 (2d Cir.1997); *Segarra v. Messina,* 158 F.R.D. 230, 235 (N.D.N.Y. 1994); *Greenwich Citizens Comm. v. County of Warren,* 1994 WL 631212 (N.D.N.Y.1994).

### ii. Lodestar Figure—Reasonable Hours

■ In order to recover attorneys' fees, the party must support the application with contemporaneous time records of work performed. *See Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986); *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). From these records, the Court determines whether the hours spent on the litigation were "reasonable" so as to warrant full reimbursement.

Here, Defendant challenges the reasonableness of both the overall time spent by Plaintiffs' attorneys and the substance of much of the work performed. Of course, the two matters are interrelated and will be addressed together. The Court notes that Defendant has raised a host of objections to the hours claimed. Due to the sheer volume of Defendant's objections, the Court will not address them all. Rather, the Court looks to the reasonableness of the hours based upon Defendant's major objections.

#### 1) Excessive Hours

Defendant objects to many of the hours claimed as excessive. The Court disagrees. As a guide to evaluating billing records, the Second Circuit has held that it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent. *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir.1992).

After reviewing the submitted records in light of this standard and its own experience, the Court will reduce Plaintiffs' fee application to remove any hours spent on "community checklists" and in "community meetings," which the Court finds were not reasonably related to ensuring compliance with the Consent Decree. Accordingly, Lewis Steele's application is reduced by 4.4 hours and Albert Jackson's application is reduced by 19.3 hours.

The remaining time records provide the required elements for a successful fee application. Furthermore, the Court concludes that the remaining billing entries do not offend its sense of reasonableness.

#### 2) Use of Co–Counsel

■ Defendant challenges the use of co-counsel as unreasonable and the staffing of this case generally. "There is no *per se*

rule against the use of multiple attorneys, however, and the court is given considerable latitude in determining the reasonableness of the utilization of co-counsel." *Macko v. General Motors Corp., Fisher Body Div.,* 1988 WL 73446 at *2 (N.D.N.Y.1988). The Second Circuit has left the determination of redundancy in fee applications to the discretion of the district court:

> [P]revailing parties are not barred as a matter of law from bringing a second attorney to depositions or an extra lawyer to court to observe and assist.... Of course, a trial judge may decline to compensate hours spent by collaborating lawyers or may limit the hours allowed for specific tasks, but ... such decisions are best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation.

*New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1146 (2d Cir. 1983) (citations omitted). The guiding principle to determine whether redundancy has occurred is the "degree of effort reasonably needed to prevail in the litigation." *Carey,* 711 F.2d at 1146. In exercising that discretion, a court must make an "assessment of what is appropriate for the scope and complexity of the particular litigation." *Carey,* 711 F.2d at 1146.

In light of the complex nature of this case, the Court cannot conclude that the use of multiple attorneys was unnecessary or extravagant.

### iii. Lodestar Calculation

▮ The lodestar amount has been calculated as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| *Greater Upstate Law Project* | | | |
| Susan Antos | 109.8 | $150 | $16,470.00 |
| *Legal Aid Society of Northeastern New York* | | | |
| Lewis Steele | 266.3 | $150 | $39,945.00 |
| Albert Jackson | 229.5 | $ 75 | $17,212.50 |
| | | Total: | $73,627.50 |

▮ Once the lodestar amount is calculated there is a strong presumption that this figure constitutes a reasonable amount. *Grant v. Martinez,* 973 F.2d 96, 101 (2d Cir.1992); *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 2641–42, 120 L.Ed.2d 449 (1992). The burden falls on the party advocating an adjustment to justify that a change is necessary. *United States Football League v. National Football League,* 887 F.2d 408, 413 (2d Cir.1989) (citing *Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 118 (3d Cir.1976)).

After reviewing Defendant's arguments in opposition, the Court sees no reason to depart from the previously calculated reasonable lodestar amount.

### III. CONCLUSION

In summary, the Court hereby awards attorneys' fees in the following amounts: $16,-470.00 to the Greater Upstate Law Project, and $57,157.50 to the Legal Aid Society of Northeastern New York.

**IT IS SO ORDERED.**