**NEW YORK STATE FEDERATION OF TAXI DRIVERS, INC.,
Plaintiff–Appellee,**

v.

**WESTCHESTER COUNTY TAXI AND LIMOUSINE COMMISSION,
Defendant–Appellant.**

No. 01–7182.

United States Court of Appeals, Second Circuit.

Argued Oct. 25, 2001.

Decided Nov. 27, 2001.

---

Bridget Gauntlett, Assistant County Attorney for the County of Westchester, White Plains, NY, for Appellant.

Michael Feldberg, Schulte Roth & Zabel LLP, New York, N.Y. for Appellee.

BEFORE: FEINBERG, MCLAUGHLIN, and PARKER, Circuit Judges.

PER CURIAM.

Defendant–Appellant Westchester County (sued incorrectly as Westchester County Taxi and Limousine Commission) ("County") appeals from the February 15, 2001 Amended Judgment of the United States District Court for the Southern District of New York (Charles L. Brieant, *Judge*) granting the motion of Plaintiff–Appellee, New York State Federation of Taxi Drivers, Inc. ("Federation"), for attorney's fees and expenses under 42 U.S.C. § 1988 in the amount of $83,796.66.

At the time of the district court's decision, the law of this Circuit permitted courts to use the "catalyst theory" to de-

termine whether a party was a "prevailing party" in § 1988 litigation for the purpose of awarding him or her reasonable attorney's fees. While this case was on appeal, the Supreme Court decided *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), which rejected the "catalyst theory." As a result of this new law, the district court's decision to award attorney's fees to the Federation must be reversed.

## I. BACKGROUND

### A. *Facts*

In 1993, the Westchester County Board of Legislators formed the Westchester County Taxi and Limousine Commission ("WCTLC") to regulate and supervise the for-hire vehicle industry in Westchester County. In April 1998, the Westchester County Board of Legislators passed Chapter 270 of the Laws of Westchester County (the "For–Hire Vehicle Law" or "Law") to establish licensing requirements for drivers, vehicles, and base-stations working within Westchester County. According to the County, one of its goals in passing the law was to spur adoption of a reciprocity agreement between the County and New York City, so for-hire vehicle drivers licensed by the County could engage in business in New York City without obtaining a New York City Taxi and Limousine Commission license and vice versa.

In May 1998, officials from the County and New York City met to discuss the County's formal request for reciprocity, and the New York City representative indicated that the County's application would be reviewed. Although the provisions of the County's For–Hire Vehicle Law went into effect in late 1998, the County imposed a grace period on enforcement, in part, because the County hoped its application would be successful.

In October 1998, New York City adopted the position that it could not grant full reciprocity to the County, because the City believed state law did not permit full reciprocity. The County continued to lobby for reciprocity but also announced in January 1999 that it would begin enforcing its For–Hire Vehicle law in March 1999.

In March 1999, the County did begin ticketing for-hire vehicle drivers without a WCTLC license for picking up or dropping off passengers in Westchester County.

In mid–1999, New York City agreed again to negotiate reciprocity, and the County and the City opened discussions on the terms of an agreement. On August 28, 2000, a Reciprocity Agreement was reached between the County and New York City, under which each party recognized the licenses granted by the other. That reciprocity agreement is now fully effective.

### B. *Plaintiff's lawsuit*

Plaintiff is a trade organization with approximately 5000 members who are livery car service drivers doing business in New York City and licensed by the New York City Taxi and Limousine Commission.

In May 1999, after the County began to enforce its For–Hire Vehicle Law against the Federation's members, the Federation filed this lawsuit against the County claiming that the law was unconstitutionally vague under both the Federal and New York Constitutions, that enforcement of the law was arbitrary and capricious, that the Law was an undue burden on the Federation's members' right to travel, and that the Federation's members were being stopped and searched in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution. The Federation

sought declaratory and permanent injunctive relief under 42 U.S.C. § 1983, as well as attorney's fees. It did not seek money damages.

After the County filed its answer, discovery commenced with the exchange of interrogatories and documents requests. Depositions were scheduled to begin November 12, 1999.

In October 1999, the County notified the Federation that negotiations over reciprocity had again gotten underway between the County and New York City. On October 19, 1999, the Federation's counsel, on behalf of both Plaintiff and Defendant, requested that discovery in the case be stayed pending the outcome of the negotiations. The Federation wrote:

> We have been informed that representatives of Westchester County and New York City have entered into discussions that might result in reciprocity between the two municipalities which may obviate the need for this lawsuit. Thus, we are hopeful that this lawsuit might be resolved without the need for judicial intervention.

Joint App. at 121.

Extensions of the adjournment were jointly requested in January and May 2000. As noted above, the Reciprocity Agreement was reached on August 28, 2000.

On October 3, 2000, the Federation filed a motion for attorney's fees and expenses, reasoning that such fees were warranted because the Federation was a "prevailing party" under 42 U.S.C. § 1988 and Rule 54 of the Federal Rules of Civil Procedure. The County opposed the Federation's motion, arguing that the Federation's lawsuit was not causally connected to any change in the County's conduct. The County also challenged the reasonableness of the requested fees.

The district court, by Memorandum and Order dated February 5, 2001 and Amended Judgment entered February 15, 2001, dismissed the complaint as moot *nunc pro tunc* as of August 29, 2000 and granted the Federation's motion, awarding $76,330 in attorney's fees and $7,466.66 in disbursements, for a total of $83,796.66. J.A. at 34, 37.

### C. The District Court's Memorandum and Order Granting Attorney's Fees

In its Memorandum and Order dated February 5, 2001, the district court noted that the reciprocity agreement "mooted the litigation on August 29, 2000" and "[t]he August 28, 2000 agreement appears to resolve the substantive issues in this litigation insofar as they affect the Plaintiff and its members." J.A. at 40.

The Court then turned to the Federation's argument that it was entitled to attorney's fees under 42 U.S.C. § 1988 as a "prevailing party." J.A. at 40–41. Noting that § 1988 fee shifting generally occurs "when a Plaintiff prevails in a final judgment," the court cited our decision in *Marbley v. Bane,* 57 F.3d 224 (2d. Cir. 1995), among others, and explained further that a party could also recover attorney's fees under the "catalyst theory." J.A. at 41.

In *Marbley,* we concluded that:

> [A] plaintiff whose lawsuit has been the catalyst in bringing about a goal sought in litigation, by threat of victory ..., has prevailed for purposes of an attorney's fee claim, even though the result has not been reduced to a judgment, consent decree, or settlement.

*Marbley,* 57 F.3d at 234–35.

The catalyst theory was based on the rationale that " '[a] lawsuit sometimes produces voluntary action by the defendant

that affords the plaintiff all or some of the relief he sought through a judgment, e.g., ... a change in the conduct that redresses the plaintiff's grievances.'" *Id.* at 233–34 (quoting *Hewitt v. Helms*, 482 U.S. 755, 760–61, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987)). For a plaintiff to be considered a prevailing party under this theory, the plaintiff's "lawsuit must be 'a catalytic, necessary, or substantial factor in attaining the relief.'" *Id.* at 234 (quoting *Koster v. Perales*, 903 F.2d 131, 135 (2d Cir.1990)).

After explaining the catalyst theory, the district court found that there was a causal connection between the Federation's lawsuit and the County's change in conduct. The court concluded the Federation was therefore a "prevailing party" and awarded attorney's fees.

## II. *Discussion*

The County filed its appellate brief on May 18, 2001, disagreeing primarily with how the district court had applied the catalyst theory to the facts. On May 29, 2001, the Supreme Court decided *Buckhannon*, rejecting the catalyst theory. The Federation, in its brief filed July 16, 2001, acknowledges that the district court's award of fees cannot stand in light of *Buckhannon* and now asks us to remand the case so it may challenge the mootness judgment.

### A. *The Award of Attorney's Fees*

The decision in *Buckhannon* concerned the fee-shifting provisions of the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3613(c)(2), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12205. The Court noted that these were just two of numerous statutes in which Congress "has authorized the award of attorney's fees to the 'prevailing party.'" *Buckhannon*, 121 S.Ct. at 1839 (citing as examples the Civil Rights Act of

1964, 42 U.S.C. § 2000e–5(k), the Voting Rights Act Amendments of 1975, 42 U.S.C. § 19731(e), and the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988). The Court therefore broadly framed the issue in the case, asking "whether [the term 'prevailing party'] includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* The Court held that the term did not include such a party. *Id.*

The Court acknowledged that most Courts of Appeals (including this one) had recognized the catalyst theory. *See id.* at 1838 n. 3 (citing *Marbley* ). However, after analyzing the clear meaning of the term "prevailing party," Supreme Court precedent on attorney's fees, the legislative history of § 1988, and the policy arguments for and against the "catalyst theory," the Court concluded that the "catalyst theory" was not a permissible basis for the award of attorney's fees. In order to be a prevailing party, the Court reasoned, a party must secure a judgment on the merits or a settlement agreement that is enforced through a consent decree. *See id.* at 1839–40. The essence of being a "prevailing party" is achieving a "material alteration of the legal relationship of the parties" that is judicially sanctioned. *Id.* at 1840.

■ Despite the fact that the holding in *Buckhannon* applied to the FHAA and ADA, it is clear that the Supreme Court intends the reasoning of the case to apply to § 1988 as well. Both the Federation and the County acknowledge that this reasoning has become the law of this case.

■ Because the Federation's lawsuit did not result in a judicially sanctioned

change in the legal relationship of the parties, the Federation is not a prevailing party and the district court's award of fees must be and is reversed.

### B. *The Federation's Request for a Remand*

 The Federation argues that "the controversy between the parties is no longer moot and further proceedings are required so that plaintiff can comply with this new procedural requirement and refile its motion for attorneys' fees." Appellee's Br. at 12. The Federation contends that the district court's decision was inconsistent with *Buckhannon*, "both in its granting of attorneys' fees to plaintiff *and in its finding this case moot.*" Appellee's Br. at 12 (emphasis added).

This claim is meritless. *Buckhannon* did not change the legal framework governing mootness. *Cf. Lewis v. Continental Bank Corp.*, 494 U.S. 472, 482, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (concerning when cases have become moot while on appeal). Because the law under which this case was deemed moot has not changed on appeal, the Federation waived its objections to the district court's judgment when it failed to raise them in the district court. In any event, nothing has occurred since the judgment below was issued to alter the fact that once the Reciprocity Agreement was adopted, the case became moot since no injury to the plaintiff could occur. The Federation's only interest in continuing litigation at this point is the recovery of attorney's fees. "This interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis*, 494 U.S. at 480, 110 S.Ct. 1249. We therefore decline the Federation's invitation to remand this case to the district court in order to allow the Federation to challenge that judgment.

### III. CONCLUSION

For the reasons set forth above, the ruling of the district court awarding attorney's fees to the Federation is REVERSED and the Federation's request that the case be remanded is DENIED.