OPINION OF THE COURT
Per Curiam.
Petitioner, who passed the Bar examination 27 years before applying for admission to practice law in New York, challenges the determination of the Committee on Character and Fitness, affirmed by the Appellate Division, denying his application on the ground of "inordinate delay.” We conclude that the Committee exceeded its authority in denying petitioner’s application on that basis.
After graduation from Harvard Law School in 1959, petitioner that same year passed the Massachusetts Bar examina *229 tian and was admitted to practice in that State. He enrolled in Harvard Graduate School of Business Administration, finishing in 1961, and thereafter accepted a position with an investment banking firm in New York City. In January 1962, petitioner was certified as having passed the New York Bar examination, but he made no effort to complete the admission process until October 1989. At no time did petitioner practice law, in Massachusetts or elsewhere.
In November 1989, during an interview before a subcommittee of the Committee on Character and Fitness, petitioner was told that because of his delay in applying, the subcommittee could not immediately recommend his admission. The subcommittee in fact recommended denial of his application based on the delay.
Petitioner then elected to present his case to the full Committee. At a meeting held in April 1990, he explained that he had delayed completing his application because of his work in the investment banking field, and based on assurances that there was no time limit on his application for membership in the New York Bar. He told the Committee that recent changes in the nature of investment banking and his firm’s practice, as well as his desire to become "of counsel” to a law firm at some point in the future, motivated his application at that time.
Petitioner submitted evidence to the Committee indicating that, although he had never formally engaged in the practice of law in any jurisdiction, he had been involved in numerous business transactions with attorneys concerning legal issues. He also provided affidavits attesting to his background and good moral character.
The Committee adopted the subcommittee report as its report to the Appellate Division. The report concluded that, in determining an applicant’s fitness, the Appellate Division had the power to consider the passage of time between the taking of the Bar examination and the application for admission, and that a delay of 27 years was inordinate. It further concluded that petitioner’s business acuity and distinguished record of community service did not excuse the delay.
After his application was denied, petitioner instituted the present proceeding at the Appellate Division, First Department (see, 22 NYCRR 602.1 [m]; CPLR 9404), for an order granting his application for admission notwithstanding the Committee’s recommendation. The motion was denied, with *230 out opinion, and we granted petitioner’s motion for leave to appeal.
We now reverse the Appellate Division order, agreeing with petitioner that the Committee and the court improperly relied on delay as the basis for finding him unfit to practice law.
Admission to the Bar is a two-part qualification process. Section 53 of the Judiciary Law vests the Court of Appeals with broad authority to promulgate rules regulating the admission of attorneys to practice in this State, including the power to provide for a uniform system of examining candidates seeking admission (Judiciary Law § 53 [1], [3]). Pursuant to that authority, this Court has promulgated rules governing uniform educational requirements (22 NYCRR 520.3, 520.4, 520.5), rules creating a uniform Bar examination (22 NYCRR 520.7, 520.8), and a rule governing admission without examination (22 NYCRR 520.9). Although a person may be admitted to the Bar only by order of the appropriate Appellate Division department (22 NYCRR 520.1 [a]), no application may be entertained by that court unless the Board of Law Examiners, which oversees the examination, has certified that the applicant has successfully completed the examination process (see, 22 NYCRR 520.6, 520.7; 22 NYCRR part 6000; see also, Judiciary Law § 56).*
The second phase of the qualification process commences with certification by the Board, indicating that the candidate has demonstrated the requisite knowledge of the law and legal ability. The Appellate Division in each department is then charged with determining that the applicant for admission "possesses the character and general fitness requisite for an attorney and counsellor-at-law” (Judiciary Law § 90 [1] [a]; see also, CPLR 9404; 22 NYCRR 520.10).
Definition of "general fitness” is at the core of this appeal. More particularly, does the subject of delay in seeking admission to the Bar fall within the jurisdiction of the Court of Appeals to define uniform standards of legal knowledge and ability, or within the jurisdiction of the Appellate Divisions to determine character and general fitness? Petitioner argues the former, insisting that, back in 1962, he satisfied the only standards that exist for determining legal knowledge and ability, and that the sole remaining inquiry is limited to matters of personal character and integrity. The Committee *231 counters that the Bar Examiners’ certification in 1962 is by now a stale event, that with so many changes in the law since then the public interest is threatened if Appellate Divisions must certify such persons as competent to practice law today, and that the delay therefore goes to petitioner’s "general fitness,” which is within its competence.
In Matter of Shaikh (39 NY2d 676), we were asked a somewhat similar question. There, an individual who had practiced law in the courts of Pakistan sought admission to the Bar of this State, claiming that his experience satisfied the rules governing admission without examination. Shaikh’s application was denied by the Appellate Division, despite his conceded good moral character, because the Committee on Character and Fitness and the court determined that he lacked "the legal training and ability necessary for the admission to the Bar.” (Id., at 680.)
We reversed that order, concluding that the Appellate Division did not have authority to deny Shaikh’s application on the basis of its independent determination that his educational qualifications were inadequate. We made clear that responsibility for determining generalized legal knowledge requirements remains with the Court of Appeals, while responsibility for the wholly separate, individualized determination of a particular applicant’s character and fitness was that of the Appellate Divisions. "Whatever the depth of the entirely understandable concern and conviction of the members of the several Appellate Divisions that unqualified persons should not be admitted to practice in our State, the delegated jurisdiction of these courts is nonetheless limited.” (39 NY2d, at 681.)
The Appellate Division’s authority to determine character and general fitness thus plainly does not include "legal training and ability.” Nonetheless, the Committee urges that Shaikh is materially different from the present case because it involved a specific educational qualification contained in the rules of this Court (22 NYCRR 520.9). By contrast, the Committee asserts, there is no Court of Appeals rule regarding delay, or "staleness” of legal knowledge, leaving that issue for "general fitness” review.
The Committee’s broad definition of general fitness must be rejected.
Viewing the provisions and design of the two-part qualification process for the admission of attorneys, it is plain that *232 questions as to the requisite currency of applicants’ legal knowledge and ability must go to generalized educational qualifications, not individualized concerns of personal character and fitness. As in Shaikh, this conclusion is apparent not only from the provisions and design of the various statutes and rules but also from sound considerations of policy. The qualities of personal moral character and fitness to practice law suggest the need for person-by-person investigation and determination at the local, departmental levels. On the other hand, any requirement that candidates have current legal knowledge would have to be the subject of uniform, State-wide standards. Unevenness among candidates and departments would be "highly inappropriate, if not legally suspect.” (39 NY2d, at 682, supra.)
In Law Students Research Council v Wadmond (401 US 154, 159), the Committee itself espoused as the correct definition of fitness review: "no more than 'dishonorable conduct relevant to the legal profession.’ ” The Committee’s long-standing practice confirms that definition as the governing concept applied throughout the State (see, e.g., Matter of Cassidy, 268 App Div 282, affd 296 NY 926 [applicant advocated violent overthrow of the Government]; Matter of Peters, 221 App Div 607, affd 250 NY 595 [disbarment in sister State]; Matter of Portnow, 253 App Div 395 [false statements under oath]; see generally, Matter of Brennan, 230 App Div 218 [concluding that the Committee is not authorized to examine a candidate’s academic or legal learning; fitness encompasses only general reputation and the like]). Only recently, in upholding a Committee’s rejection of an application based on the candidate’s pending bankruptcy filing (Matter of Anonymous, 74 NY2d 938), we spoke of fitness as "conduct reasonably viewed as incompatible with a lawyer’s duties and responsibilities as a member of the Bar.” (74 NY2d, at 940; see also, Matter of Holtzman, 78 NY2d 184.)
The Committee’s concern about the implications of long delay between the Bar examination and admission is surely understandable, as is its concern that reversal here exposes a gap in the rules that may, if left untended, disserve the public interest. Such concerns, however, point up the need for uniform rules requiring admission within a stated period after certification by the Board of Law Examiners; they do not empower the Committee to overstep its jurisdiction and itself establish those requirements.
*233 Petitioner’s delay in seeking admission should therefore not have been the basis for a finding of unfitness. To the extent Matter of Emerman (27 AD2d 537, affd on opn below 28 NY2d 552) suggests otherwise, it should not be followed.
Finally, we address the Committee’s contention that petitioner’s proper course was to seek a waiver from this Court excusing the delay. An application may be made to this Court for a waiver of any provision of its rules where strict compliance would cause undue hardship (22 NYCRR 520.12). In that there is no rule establishing the purported bar to petitioner’s admission, the waiver procedure is inapplicable.
Accordingly, the order of the Appellate Division should be reversed, without costs, and the matter remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone and Hancock, Jr., concur in Per Curiam opinion; Judges Simons and Bellacosa taking no part.
Order reversed, etc.

 The exception is the provision for admission without examination where an applicant fulfills the requirements of 22 NYCRR 520.9.