Festus **CAMPBELL**, Plaintiff,

v.

John **GREISBERGER**, As Chairperson of the Committee on Character and Fitness, New York State Supreme Court, Appellate Division Fourth Department, Patricia O'Toole Vazzana, As a Member of the Committee on Character and Fitness, Defendants.

No. 94–CV–6251T.

United States District Court,
W.D. New York.

July 11, 1994.

Matthew J. Fusco, Chamberlain, D'Amanda, Oppenheimer & Greenfield, Rochester, NY, for plaintiff.

Charles D. Steinman, Office of New York State Atty. Gen., Dept. of Law, Rochester, NY, for defendants.

## INTRODUCTION

TELESCA, Chief Judge.

Plaintiff, Festus Campbell (Campbell), presented the Court with an Order to Show Cause on May 26, 1994, seeking (1) to preliminarily enjoin defendant New York State Supreme Court, Appellate Division, Fourth Department, from further use of Question 18(c) on the application for admission to the bar and (2) to prohibit defendants John Greisberger and Patricia O'Toole Vazzana from requiring his appearance at a hearing to inquire into his character and fitness before certifying him for admission to the Bar. Plaintiff essentially contends that the defendants have violated Title II of the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12131, *et seq* (the "ADA") and that he should be admitted to the bar without further inquiry into his background. A hearing on this matter was held on Tuesday, June 21, 1994.

## FACTS

### A. *Background.*

Plaintiff graduated from the State University of New York at Buffalo Law School in 1988. While studying for his law degree, he spent the summer of 1986 interning at the Monroe County District Attorney's Office. The following summer he served as an intern in the United States Attorney's Office and continued that internship on a part-time basis during his third year of law school. After graduating, in October 1988, Campbell began working for the Monroe County Legal Assistance Corporation where he was permitted to practice law as a law graduate.[1] Campbell worked for the Monroe County Legal Assistance Corporation until May, 1989, when he was terminated because he had failed the New York State Bar examination for the second time. In July, 1993, Mr. Campbell took and passed both the New York and Pennsylvania Bar examinations. He is admitted to practice in the State of Pennsylvania.

### B. *Plaintiff's Application for Admission to the New York State Bar.*

Following notifications that he had passed the New York Bar examination, Campbell then completed the required application for admission to the New York State Bar. Of particular relevance to this matter are Mr. Campbell's answers to Questions 17 (relating

---

**1.** According to Mr. Campbell's affidavit, an order of the Appellate Division, Fourth Department permits law graduates to practice law for the Monroe County Legal Assistance Corporation for a period up to eighteen (18) months unless that individual has twice failed the New York State Bar examination.

to prior arrests), 18(c) (relating to treatment for mental illness) and 19 (relating to unsatisfied judgments, obligations and debts including defaults on student loans). In his narrative response to Question 17 dated December 6, 1993, Campbell indicated that he was arrested in 1990 and charged with assault in the third degree by a City of Rochester police officer who witnessed him slap his wife.[2] Campbell wrote that at the time of his arrest he was suffering from schizophrenia bipolar disorder and he was intoxicated. In his affidavit submitted in connection with this action, Campbell noted that shortly thereafter he was committed to the psychiatric wing at Strong Memorial Hospital, where he remained from March 21, 1990 through April 5, 1990. In his narrative answer to Question 17 Mr. Campbell further wrote, "I am almost 100% normal now and have no problem with either alcohol or the schizophrenia."

In his narrative response to Question 19 (also dated December 6, 1993), Campbell indicated that he was forced to default on his Perkins student loan because he became ill with schizophrenia bipolar disorder in October, 1989. A judgment in the amount of approximately $13,000 was taken against him in March, 1993 based upon his student loan default. However, Campbell indicated in his December 6, 1993 statement that he planned to commence an action to reopen the default judgment because it resulted from his mental illness. He also noted that his illness prevented him from seeking employment from October, 1989 to August, 1993 and that he has been receiving welfare benefits since March, 1990.

Also relevant is Question 18(c) of the application for admission to the bar which Campbell contends violates the Americans With Disabilities Act. Question 18(c) on Campbell's application reads as follows:

State whether you have since attaining the age of 18, been adjudged an incompetent, or had proceedings brought to have you adjudged an incompetent, or been committed to or been a patient in any institution for the care of persons suffering from mental or nervous disorders or drug addiction, drug abuse or alcoholism.

Campbell answered "yes" to this question. It must be noted, however, that this question no longer appears in the standard application for admission to the bar of the State of New York. Currently, applications for admission to the bar include a document entitled, "Attachment A" which reads:

You are not required to respond to Question 18(c) on the bar application. Please respond to the following two questions in place of Question 18(c):

1. Do you have any physical, mental or emotional condition that could adversely affect your capability to practice law?

———————.

2. Are you currently using any illegal drugs? —————

If your answer is "yes" to either question, state the matter fully below.

Campbell contends that this question was changed only as a result of this litigation. He argues that merely changing question 18(c) does not absolve the defendants of any responsibility for violating the ADA.

C. *Plaintiff's Character and Fitness Interview.*

As part of his application process, Campbell was interviewed on January 31, 1994, by defendant Vazzana on behalf of the Character and Fitness Committee of the Appellate Division, Fourth Department. According to Ms. Vazzana's affidavit, during that interview, when asked about his response to Question 17, Campbell told her that he had been arrested on two occasions; the first being in February, 1990, when he was charged with assault in the third degree for slapping his wife in the presence of a police officer; and the second, was approximately one month later when he was arrested pursuant to the mental hygiene law as a result of a disturbance at his sister's home. That second arrest, he recounted, resulted in his admission to the psychiatric unit at Strong Memorial Hospital on March 21, 1990 where

---

**2.** The criminal matter was adjourned in contemplation of dismissal and the charge was expunged from his record.

he remained until April 5, 1990. This second arrest was not referenced in Mr. Campbell's written application.

When asked about his response to Question 19 regarding his default on the student loan, Campbell noted that he had not yet commenced proceedings to open the default judgment. He also told her that any questions she had relating to his schizophrenic condition would be most easily answered by speaking to his treating professionals, Sue Kuhn, M.S., R.N., C.S., and Isis W. Bottros, M.D. At this point, the issue of granting a release and authorization to obtain and examine Campbell's medical records was discussed. Campbell claims that Ms. Vazzana presented him with a prepared authorization form and demanded he sign it to allow the committee to investigate further into his illness and treatment. Ms. Vazzana avers that she presented him with a written release form for his consideration, but did not demand that he sign it. Campbell left the interview with the unsigned original and a copy of the release.

### D. Events Relating to the Release and Authorization Form.

The following day, on February 1, 1994, Ms. Vazzana wrote Campbell stating that she had spoken with Mr. Greisberger, Chairman of the Character and Fitness Committee, about the release under Campbell's consideration. In part, her letter states, "Mr. Greisberger agrees that it would be appropriate for us to ask you to execute an authorization such as this to enable the Committee to inquire further about your illness, treatment, diagnosis, prognosis and matters related to those issues." On February 2, 1994, Campbell executed the proposed release and gave it to Nurse Kuhn. Thereafter, on February 8, 1994, Campbell called Ms. Vazzana and informed her in substance that he had given the request for his medical records and psychiatric records a great deal of thought, but that he believed the materials were not relevant and that her request was unreasonable. He also told her that he could obtain another letter from his doctor as to his diagnosis and prognosis.

That same day, Ms. Vazzana was contacted by Melanie Shaw, Esq. a staff attorney with Disability Advocates, Inc., a not-for-profit law firm in Albany. Ms. Shaw stated that she represented Campbell and any inquiry into his mental condition as well as the request for his medical and psychiatric records was inappropriate. Ms. Vazzana told Ms. Shaw that she would consider the release abrogated and canceled.

### E. Reports from Treating Professionals.

Campbell obtained a total of three letters from Nurse Kuhn and Dr. Bottros. Two are identical except for their date (one is dated August 19, 1993 and the other is dated January 19, 1994) and are signed by Nurse Kuhn and Dr. Bottros. Both letters state that Campbell underwent inpatient treatment from March 21, 1990 to April 5, 1990 and outpatient treatment after his discharge from the hospital. They further state that Campbell attended a day treatment program at Strong from October 29, 1990 to February 1, 1991 and that he was medicated with haldol and benadryl until April 1992 and since that time Campbell has not taken any medication and there has been no recurrence of symptoms. The reports conclude that "Mr. Campbell's progress was slow, as was expected with mental illness, and he was unable to work and assume his premorbid responsibilities. He continues to make progress, and it is hoped he will return to his former level of functioning." In a subsequent letter dated February 9, 1994, (notably only a few days after Campbell's interview with Ms. Vazzana), Dr. Bottros questioned Campbell's initial diagnosis of schizophrenia and manic depressive disorder in light of his observation that "it is rare that a person with one of the schizophrenia disorders would be able to pass the New York State Bar exam and do well without medication." Dr. Bottros also added that Campbell has made a full recovery and that "his prognosis appears excellent for a full recovery at the present time." This letter was addressed to John Greisberger as Chairman of the Character and Fitness Committee and reflects a copy to Ms. Vazzana. However, Ms. Vazzana claims that she never received that letter.

F.  *Action Taken by the Character and Fitness Committee.*

The Character and Fitness Committee has deferred action on Campbell's application and has determined that a hearing must be held to inquire into a variety of matters. Those matters subject to inquiry include: (1) past and current employment/resignations; (2) financial obligations/debts/payments status; (3) information provided by him in connection with his application for admission to the Pennsylvania Bar;[3] (4) circumstances of charges/arrests/dispositions in 1990; (5) specific questions about his current behavior/conduct or current impairment of his ability to perform the duties of a lawyer including inquiries into his exercise of responsibility in the handling of funds, history of trustworthiness, integrity and record of compliance with the deadlines, and other aspects of his background affecting the representation of clients. All of these topics of inquiry were noted in the Notice of Action taken by Committee on Character and Fitness and Notice of Hearing dated April 27, 1994. The hearing was initially scheduled for June 7, 1994, but apparently has not yet been held.

Several members of the Character and Fitness Committee have submitted affidavits in opposition to plaintiff's preliminary injunction motion indicating that they wish to question him about certain representations he made in his application relating to his employment and his outstanding student loan, with respect to which there appear to be some inconsistencies. They state, however, that they do not intend to question him with respect to his alleged past mental illness or any treatment he received in connection therewith. In other words, Campbell is welcome to raise the issue of his mental illness during the hearing by way of mitigation or explanation of his conduct, but the Committee members will not initiate discussion of his condition.

### DISCUSSION

In his complaint, Campbell seeks the following relief: a preliminary and permanent injunction barring the further use of Question 18(c) on the Application for Admission to the Bar; a preliminary and permanent injunction barring Ms. Vazzana and Mr. Greisberger from conducting a hearing or making other inquiries prior to certifying his admission to the Bar; and damages for pain and suffering in the amount of $300,000 against defendants Vazzana and Greisberger; and attorney fees and costs. In his current motion, plaintiff seeks to preliminarily enjoin further use of Question 18(c) and to preliminarily enjoin defendants Greisberger and Vazzana from holding any hearing or conducting any further inquiry before certifying his admission to the bar. For the reasons that follow, Campbell's request for preliminary injunctive relief as stated is denied.

*Preliminary Injunction Standard*

■ It is well-settled in this Circuit that a preliminary injunction may be granted where the movant demonstrates: (1) irreparable harm and (2) either (a) a likelihood of success on the merits or (b) the existence of serious question going to the merits of the case to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *Jackson Dairy, Inc. v. H.P. Hood and Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam). A higher standard applies, however, where the grant of a preliminary injunction will give the movant es-

---

**3.** Mr. Campbell has been admitted to practice in the State of Pennsylvania. Mr. Greisberger notes in his affidavit that he contacted the Pennsylvania Board of Law Examiners and learned that Mr. Campbell made a representation in that application different from an answer to a similar question on the New York State Admission Application. The Pennsylvania Bar application question asks whether the applicant, within the last 3 years, has undergone treatment or been committed to an institution for the treatment of mental illness. Mr. Campbell answered no. He did so based on his belief that, because his hospitalization occurred *longer* than 3 years prior to his application he did not have to reveal it. In his reply papers, Mr. Campbell indicates that he has reviewed his Pennsylvania Bar application with his attorney and realized that he provided incorrect information inasmuch as he did not indicate his participation in the day treatment program at Strong from 1990 through January 1991. On June 6, 1994, he wrote to a Mr. Tassos which describes his current lawsuit and indicates that he was hospitalized and attended a day treatment program. His letter explains that he did not intentionally withhold this information, but he "did not consider the day treatment program as relevant to [the] question."

sentially all of the relief he seeks. In such an instance, the movant must establish both "a substantial likelihood of success on the merits, rather than merely a likelihood of success", *Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir.1988) (citing *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025–26 (2d Cir.1985)) and a strong showing of irreparable harm, *Doe v. New York University*, 666 F.2d 761, 773 (2d Cir.1981) (citing *Clune Publishers' Association*, 214 F.Supp. 520, 531, *aff'd*, 314 F.2d 343 (2d Cir.1963); *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir.1976)).

*Admission to Practice*

■■■ Membership in the bar of the State of New York "is a privilege burdened with conditions." *Matter of Rouss*, 221 N.Y. 81, 84, 116 N.E. 782 (1917), *cert. denied*, 246 U.S. 661, 38 S.Ct. 332, 62 L.Ed. 927 (1918). These conditions, as required by statute, must be satisfied by each proposed new member of the bar prior to admission. *Application of Cassidy*, 268 A.D. 282, 51 N.Y.S.2d 202, 204 (2d Dep't.1944), *aff'd*, 296 N.Y. 926, 73 N.E.2d 41 (1947). Section 90(1)(a) of the New York Judiciary Law provides that an applicant for admission to practice law in the State of New York must provide certification by the State Board of Bar Examiners that the applicant has passed the bar examination and further that the appellate division is satisfied that the "person possesses the character and general fitness requisite for an attorney and counsellor-at-law". In order to evaluate applicants' character and fitness, pursuant to § 9401 of the New York Civil Practice Law and Rules, the appellate division appoints a Character and Fitness Committee whose members are responsible to investigate the character and fitness of each and every applicant for admission to the bar. A necessary prerequisite to admission to practice is the Committee's certification "that it has carefully investigated the character and fitness of the applicant and that, in such respects, he is entitled to admission." N.Y.Civ.Prac.L. & R. § 9404. In performing its responsibilities, the Character and Fitness Committee "functions as an arm of the Court in an advisory capacity." *Association for the Preservation of Freedom of Choice, Inc. v.*

*Wadmond*, 215 F.Supp. 648, 650 (S.D.N.Y. 1963).

The process through which an application is reviewed by the Character and Fitness Committee is set forth in 22 N.Y.C.R.R. § 1022.34. The Committee may begin its investigation after an applicant has been notified that he has passed the bar examination. The investigation may include an interview of the candidate by a Committee member who may require the candidate "to furnish such additional information or proofs of good character as the committee ... member ... may consider pertinent." 22 N.Y.C.R.R. § 1022.34(d). If, following the investigation, the Committee approves the application, the Chairman then certifies to the Appellate Division that the applicant possesses the requisite character and fitness to practice law. 22 N.Y.C.R.R. § 1022.34(e). If the Committee does not approve the candidate's application for admission after its investigation, a hearing is then held. 22 N.Y.C.R.R. § 1022.34(f).

As the United States Supreme Court wrote in *Schware v. Board of Bar Examiners of the State of New Mexico*, "[a] State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar ...". 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). To this end, "state courts have traditionally been allowed wide discretion in the establishment and application of standards of professional conduct and moral character to be observed by their court officers." *Erdmann v. Stevens*, 458 F.2d 1205, 1210 (2d Cir.), *cert. denied*, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972). This discretion "arises out of a recognition of the special relationship between the attorney and the court which grants him a license to practice before it ..." *Mildner v. Gulotta*, 405 F.Supp. 182, 192 (E.D.N.Y.1975), *aff'd*, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976); *See also Matter of Anonymous*, 74 N.Y.2d 938, 550 N.Y.S.2d 270, 549 N.E.2d 472 (1989). As a result, federal courts have been "particularly chary of intrusion into the relationship between the state and those who seek license to practice in its courts." *Tang v. Appellate Division of the New York Supreme Court, First Department*, 487 F.2d

138, 143 (2d Cir.1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974).

Each of the states, as well as the Commonwealth of Puerto Rico and the District of Columbia, establish moral character qualifications as conditions precedent to admission to the bar and the bar applicant bears the burden of demonstrating his good moral character. *Konigsberg v. State Bar of California,* 366 U.S. 36, 41 n. 4, 81 S.Ct. 997, 1002 n. 4, 6 L.Ed.2d 105 (1961). In New York State, the character review has been defined to "encompass[ ] no more than 'dishonorable conduct relevant to the legal profession.'" *Law Students Civil Rights Research Council, Inc. v. Wadmond,* 401 U.S. 154, 159, 91 S.Ct. 720, 724, 27 L.Ed.2d 749 (1971). *See also In the Matter of Anonymous,* 78 N.Y.2d 227, 232, 573 N.Y.S.2d 60, 63, 577 N.E.2d 51 (1991).

In a case analogous to that at bar, the New York Court of Appeals considered a challenge brought by a bar applicant who was denied admission after the Character and Fitness Committee concluded that the applicant lacked "the character necessary to discipline himself to control his standard of living and the amount of his indebtedness, thus showing a lack of financial responsibility necessary for an attorney." *In the Matter of Anonymous,* 74 N.Y.2d 938, 550 N.Y.S.2d 270, 549 N.E.2d 472 (1989). The applicant contended that the Character and Fitness Committee and the Appellate Division had denied his admission because of his bankruptcy in violation of 11 U.S.C. § 525.[4] In analyzing the issue, the Court of Appeals wrote

> A determination of unfitness must rest not on the fact of bankruptcy, but on conduct reasonably viewed as incompatible with a lawyer's duties and responsibilities as a member of the Bar. To successfully establish a claim that 11 U.S.C. § 525 has been violated, an applicant must establish that insolvency, the filing of bankruptcy or the discharge of debt is the sole reason for denial of the application.

74 N.Y.2d at 940, 550 N.Y.S.2d at 271–72, 549 N.E.2d at 473–74 (citations omitted) (emphasis added). The Court ultimately concluded that the record contained sufficient evidence to support the finding of unfitness and upheld the decision of the Appellate Division.

■ Similarly in this case, while the Character and Fitness Committee may not disapprove Campbell's application on the basis of his mental illness *per se,* it may nonetheless inquire into his conduct which can be "reasonably viewed as incompatible with a lawyer's duties". *Id.* If his conduct (which he claims was the result of his mental illness) can be "reasonably viewed as incompatible with a lawyer's duties and responsibilities as a member of the Bar", then the Committee may deem him unfit to practice law.

■ Initially, plaintiff seeks a preliminary injunction preventing further use of Question 18(c) on the bar admission application. However, because that question is no longer being used, there is no need to prevent an injury which no longer can result. Accordingly, since Campbell's motion in this regard is moot, it is denied.

■ Also Campbell's motion to enjoin defendants Greisberger and Vazzana from inquiring further into his background prior to certifying him for admission to the bar, fails to meet the standard for injunctive relief inasmuch as he has failed to establish that he will suffer the requisite irreparable harm. The Committee members have noted in their affidavits that they do not intend to inquire into his mental illness, rather, they plan to inquire into his conduct to the extent that it bears upon his integrity, responsibility, honesty and ability to represent clients in the future. Should Campbell raise the issue of his mental illness to explain some of his conduct, then, inquiry by the Committee into his mental illness as it is relevant to that conduct (i.e., his arrests and his default on his student loan), is appropriate.

Furthermore, the fact that the Committee wishes to inquire further of Campbell prior to deciding whether to recommend his admission to the Bar does not in it of itself suggest that Campbell will be irreparably harmed by

---

**4.** 11 U.S.C. § 525 prohibits a governmental unit from refusing to grant a license solely on the applicant's current or former status as a bankruptcy debtor.

that inquiry. It is possible that further inquiry will clarify matters sufficiently for the Committee members such that they will ultimately recommend Campbell's admission. The hearing was noticed and is being held pursuant to NYCRR § 1022.34 and is in fulfillment of the responsibilities of the Committee on Character and Fitness as those responsibilities are set forth in N.Y. Judiciary Law § 90. To fail to conduct such a hearing in light of the questions the Committee members have related to Campbell's application and conduct, would amount to an abrogation by the Committee of its responsibilities under New York law.

Because Campbell has failed to meet the threshold for obtaining injunctive relief by demonstrating irreparable harm, his motion for a preliminary injunction against defendants Greisberger and Vazzana is denied. *See Walt Disney Productions v. Basmajian*, 600 F.Supp. 439, 441 (S.D.N.Y.1984) ("the absence of a showing of irreparable injury is fatal").

To restrain their further inquiry by a decree of this court would be an improvident exercise of discretion and inconsistent with established concepts of federalism. As the Supreme Court noted in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), with regard to the concept of federalism:

> [T]he concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. ... What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* at 44, 91 S.Ct. at 750–51.

ALL OF THE ABOVE IS SO ORDERED.