Festus CAMPBELL, Plaintiff–Appellant,

v.

John GREISBERGER, as Chairperson of the Committee on Character and Fitness; and the New York State Supreme Court, Appellate Division, Fourth Department; and Patricia O'Toole Vazzana, as a member of the Committee on Character and Fitness, Defendants–Appellees.

No. 1171, Docket 95–7967.

United States Court of Appeals, Second Circuit.

Argued March 11, 1996.

Decided March 28, 1996.

Matthew J. Fusco, Rochester, N.Y. (Chamberlain, D'Amanda, Oppenheimer & Greenfield, Rochester, N.Y., of counsel), for Plaintiff–Appellant.

Darrell Joseph, Assistant Attorney General, Albany, N.Y. (Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Nancy A. Spiegel and Frank K. Walsh, Assistant Attorneys General, of counsel), for Defendants–Appellees.

Before WALKER, McLAUGHLIN, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

Plaintiff, Festus Campbell, an applicant for admission to the New York State Bar, filed suit in the United States District Court for the Western District of New York (Michael A. Telesca, *Chief Judge*), against the New York State Supreme Court, Appellate Division, Fourth Department, and two members of the Committee on Character and Fitness (the "Committee"), alleging violations of the Americans with Disabilities Act (the "ADA").[1] 42 U.S.C. § 12131 *et seq.* Campbell, who has a history of schizophrenia, challenges two requests for medical information made by the defendants. First, he claims that question 18(c) of the bar application, which inquired into the applicant's history of mental illness, violated the ADA. Campbell seeks declaratory and injunctive relief barring use of the question. Second, he contends that the Appellate Division violated his rights under the ADA by conditioning his admission to the bar on his submission of medical evidence of his fitness to practice law. The district court dismissed Campbell's claims on the grounds of mootness and lack of subject matter jurisdiction.[2] We affirm.

## Background

Campbell's claims stem from the following facts. After passing the New York State bar examination in July 1993, Campbell filed an application for admission to the bar. Three questions on that application form are pertinent to this appeal. Question 17 required applicants to state the facts underlying any arrest for, or conviction of, any felony or misdemeanor. In response to this question, Campbell stated that he had been arrested for assaulting his wife. He explained that at the time of the arrest he was suffering from "a mental disorder called Schizo-phrenia Bipolar Disorder." Question 19 required an applicant to state whether he has any unsatisfied judgments, past due debts, or student loans on which he has defaulted. Campbell responded that he had defaulted on a student loan in October of 1989 and that the default was caused by his mental illness.

Question 18(c) asked, "State whether you have since attaining the age of 18, been

---

1. In his complaint, Campbell also asserted a claim under 42 U.S.C. § 1983. The district court granted summary judgment for the defendants on this claim, and Campbell has not appealed.

2. The district court also denied Campbell's motion for a preliminary injunction. *Campbell v. Greisberger,* 865 F.Supp. 115 (W.D.N.Y.1994).

adjudged an incompetent, or had proceedings brought to have you adjudged an incompetent, or been committed to or been a patient in any institution for the care of persons suffering from mental or nervous disorders or drug addiction, drug abuse or alcoholism?" Campbell responded "yes" to this question and submitted a letter from his psychiatrist. The letter explained that Campbell had been diagnosed with schizophrenia, was hospitalized in a psychiatric unit for two weeks in 1990, was severely disabled from his illness in 1990 and 1991, and thereafter attended a day treatment program at the hospital for approximately three months. According to the letter, Campbell continued to see a psychiatrist for out-patient care, but had not taken any medication for his illness since April 1992.

In accordance with New York State regulations, on January 31, 1994, defendant-appellee Patricia O'Toole–Vazzana, Esq., interviewed Campbell on behalf of the Committee. Vazzana questioned Campbell about his arrests,[3] his default on his student loan, and his mental illness. She then requested that Campbell sign an authorization form permitting release of his medical records. After consideration, Campbell refused, advising Vazzana that he believed that question 18(c) and the Committee's inquiry into his history of mental illness were illegal under the ADA.

On March 10, 1994, question 18(c) was temporarily removed from the bar application form and replaced by two other questions that Campbell does not challenge. On June 13, 1994, the replacement of question 18(c) became permanent.

The Committee held a hearing on Campbell's application on September 9 and 20, 1994. At the hearing, the Committee made no further requests for Campbell's medical records. On November 16, 1994, the Committee issued a decision approving Campbell's application and recommending him to the Appellate Division for admission to the bar.

The Appellate Division, however, denied Campbell's application for admission, with leave to renew, finding that he had failed to show that he possessed the character and fitness required to practice law. In a decision issued February 3, 1995, the Appellate Division found that:

> Petitioner raised his diagnosed schizophrenia and the severe disabling nature of his illness to explain his default on a student loan, his inability to work for a four-year period and his two prior arrests. Inasmuch as petitioner has attempted to excuse his conduct based upon a mental illness, petitioner is required to demonstrate that his illness will not impair his current ability to perform the responsibilities of an attorney and counselor at law. Petitioner has failed to meet that burden. The record contains numerous inconsistent and conflicting statements regarding the prognosis of petitioner, his need for medication and his willingness to adhere to a prescribed regimen of medication.
>
> Petitioner may renew his application for admission upon submission of appropriate medical proof on the issue of his current prognosis and course of treatment.

Campbell took no further action in state court.

### Discussion

#### I. Challenge to Question 18(c)

Campbell's complaint included a demand for injunctive and declaratory relief barring the Appellate Division from using question 18(c) on the ground that it violates the ADA. Because the Appellate Division had previously removed question 18(c) from the bar application, the district court dismissed the claim as moot. The complaint also sought money damages. On appeal Campbell has not challenged the dismissal of his damages claim.

■ Campbell argues that his challenge to question 18(c) falls under the voluntary cessation exception to the mootness doctrine. Because "[t]he defendant is free to return to his old ways," "voluntary cessation of allegedly illegal conduct does not deprive the

---

3. In addition to the arrest he provided information about in his response to question 17, Campbell was arrested on one other occasion. The second arrest led to his placement in the psychiatric unit of the hospital.

tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). A case may nevertheless be moot if the defendant can demonstrate that (1) "there is no reasonable expectation that the alleged violation will recur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (citations and internal quotations omitted).

■ The district court acted well within its powers in dismissing Campbell's claim for injunctive relief as moot. *See Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 61 (2d Cir.1992). There is no reason to believe that the Appellate Division will reinstate question 18(c). The question was removed, first on a temporary basis, then permanently. *See id.* at 59. ("Some deference must be accorded to a state's representations that certain conduct has been discontinued."). Moreover, as the Appellate Division withdrew the question two and a half months before Campbell instituted this suit, there is nothing to indicate that it did so merely to avoid judicial scrutiny. *Cf. City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n. 11, 102 S.Ct. 1070, 1075 & n. 11, 71 L.Ed.2d 152 (1982).

Campbell argues that because the Appellate Division conditioned the renewal of his application on his submission of additional medical information, he is still suffering from the effects of the allegedly illegal question. This argument is without merit. Campbell disclosed his mental illness in answers to questions unrelated to question 18(c), as justification for his past arrests and default on a student loan. As the decision of the Appellate Division makes clear, the request for medical information was an inevitable consequence of Campbell's attempt to use his mental illness to excuse his arrests and default, and not a result of his answer to the challenged question.

■ In dismissing Campbell's challenge to question 18(c) in its entirety, the district court did not expressly address whether his claim for a declaratory judgment, as opposed to injunctive relief, is moot. In certain circumstances it may be possible for a claim for declaratory relief to survive, notwithstanding the mootness of a companion claim for an injunction. *See, e.g., Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); *Jones v. Smith*, 784 F.2d 149, 152 (2d Cir. 1986). Nonetheless, we find that the district court had ample justification for dismissing this claim either for mootness, *see Preiser v. Newkirk*, 422 U.S. 395, 402–03, 95 S.Ct. 2330, 2334–35, 45 L.Ed.2d 272 (1975); *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 414–15, 92 S.Ct. 574, 575–76, 30 L.Ed.2d 567 (1972), or on other grounds. "[T]he declaratory judgment statute 'is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Green*, 474 U.S. at 72, 106 S.Ct. at 428 (quoting *Public Service Comm'n v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952)). As the district court dismissed all Campbell's other claims in their entirety, and the Appellate Division had abandoned use of question 18(c), no practical consequences followed from his claim for declaratory judgment. The district court would have been justified in declining to exercise the declaratory jurisdiction, and would surely do so if we were to remand for consideration of the question. Such a remand would be without practical purpose. We therefore affirm the district court's dismissal of Campbell's challenge to question 18(c) in its entirety.

## II. *Challenge to the Appellate Division's Denial of Campbell's Application*

Campbell contends that the Appellate Division's denial of his application and its order that he provide additional medical information as a pre-condition to renewing his application violate the ADA. The district court held that under the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), it did not have subject matter jurisdiction over this claim. We agree.

■ *Rooker* established that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a civil judgment of a state court]." *Rooker*, 263 U.S. at 416, 44 S.Ct. at 150. *Feldman* was a suit very similar to this one. Two unsuccessful applicants for admission to the District of Columbia Bar brought suit in the United States District Court seeking to invalidate their rejection by the District of Columbia Court of Appeals. They based their challenge on the contention that the District of Columbia's rule limiting admission to graduates of accredited law schools violated various provisions of federal law. *Feldman*, 460 U.S. at 464–65, 468–69, 472, 103 S.Ct. at 1305–06, 1307–08, 1309–10.

■ The Supreme Court viewed the suit in *Feldman* as raising two types of claims— "[t]he first [being] a constitutional challenge to the state's general rules and regulations governing admission; the second [being] a claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission." *Feldman*, 460 U.S. at 485, 103 S.Ct. at 1316 (quoting *Doe v. Pringle*, 550 F.2d 596, 597 (10th Cir. 1976), *cert. denied*, 431 U.S. 916, 97. S.Ct. 2179, 53 L.Ed.2d 227 (1977)). The Supreme Court held that lower federal courts have jurisdiction to entertain suits of the first type, but not of the second. *Feldman*, 460 U.S. at 485–86, 103 S.Ct. at 1316–17. As to the second, review of a judicial decision of the state court on an individual's application may be had only in the Supreme Court. *Id.* at 486, 103 S.Ct. at 1316–17.

To the extent that the *Feldman* plaintiffs were challenging the lawfulness of the District of Columbia's rule limiting eligibility to graduates of accredited law schools, the Court ruled that the federal district court had jurisdiction to entertain such a suit because the court's promulgation of the rule was of legislative, rather than judicial, character. *Id.* at 486–87, 103 S.Ct. at 1316–17. To the extent, however, that the plaintiffs were protesting the ruling which denied their personal applications to be considered for the bar, that ruling was found to be of judicial character and therefore not reviewable in a federal court other than the Supreme Court. *Id.* at 479, 486–87, 103 S.Ct. at 1313, 1316–17.

■ Campbell contends his circumstances are different because he is challenging the Appellate Division's request for information, rather than its denial of his application. We see no merit to the distinction he draws. The Appellate Division denied his application, allowing him to renew upon submission of appropriate medical evidence. The Appellate Division based its decision on the unique facts of Campbell's case; it did not purport to establish a rule of general application. *See McCready v. Michigan State Bar*, 881 F.Supp. 300, 304 (W.D.Mich.1995). We find this denial no less "judicial" than the denials in *Feldman*.

The fact that the decision of the Appellate Division may be considered interlocutory, rather than final, does not change this conclusion. It cannot be the meaning of *Rooker–Feldman* that, while the inferior federal courts are barred from reviewing *final* decisions of state courts, they are free to review interlocutory orders. Nor does Campbell make a compelling point in his contention that he is prevented by the interlocutory nature of the order from securing any review at all. Assuming the order of the Appellate Division would be considered interlocutory in New York, *cf.* N.Y. Civ. Prac. L. & R. § 5611, he has various options open to him. Based on his refusal to submit further medical evidence, he can request that the Appellate Division finally deny his petition. Alternatively, he may seek permission to appeal to the Court of Appeals, *see* N.Y. Civ. Prac. L. & R. § 5602, whose action would be subject to review in the Supreme Court.

What he may not do is sue in the federal district court for review of the New York court's adjudication of his petition.

*Conclusion*

The decision of the district court is affirmed.