**David YASSKY, Steven Banks, Charles Barron, John W. Carroll, Bill De Blasio, Leslie Marshall, Charles Monaghan, David Reiss, and Lawrence R. Tierney, Plaintiffs,**

**v.**

**KINGS COUNTY DEMOCRATIC COUNTY COMMITTEE; Thomas J. Garry, Treasurer, Kings County Democratic County Committee; Jeffrey C. Feldman, Executive Director, Kings County Democratic County Committee; Executive Committee of the Kings County Democratic County Committee; Clarence Norman, Jr., Chair, Executive Committee of the Kings County Democratic County Committee; New York City Board of Elections; Weyman A. Carey, Michael J. Cilmi, Mark B. Herman, Douglas A. Kellner, Frederic M. Umane, Nancy Mottolaschacter, Terrence C. O'Connor, Vincent J. Velella, and Stephen H. Weiner, Commissioners, New York City Board of Elections, Defendants.**

**No. 01 CV 3372 (NG).**

United States District Court, E.D. New York.

March 25, 2003.

Brennan Center for Justice at NYU School of Law, Nancy Jean Northrup and Jeremy Michael Creelan, New York City, for plaintiff.

Israel Goldberg, Brooklyn, NY, for defendant.

## OPINION AND ORDER

GERSHON, District Judge.

In *Lerman v. Board of Elections*, 232 F.3d 135 (2d Cir.2000), *cert. denied*, 533 U.S. 915, 121 S.Ct. 2520, 150 L.Ed.2d 692, (2001), the Court of Appeals for the Second Circuit invalidated, under the First Amendment, a New York State Election

Law provision, contained in Section 6–132(2), which restricted political speech and political association by requiring that witnesses to candidate petitions for primary elections be residents of the same political subdivision in which the candidate was running for office. All signatures on petitions witnessed by individuals living in other districts were disqualified under the law even if the witnesses were registered voters and enrolled members of the party. Shortly after that ruling, the Kings County Democratic County Committee ("KCDCC") enacted a rule which effectively reinstated the Election Law provision struck down in *Lerman*, for Democratic Party primary elections in Kings County, and had the same effect as that law on candidates seeking access to the primary ballot. The rule at issue, codified at Section 6 of Article VIII of the Rules for the Government of the KCDCC (the "Rule"), provides that party members may witness petitions only in the districts where they are enrolled to vote and reside.

### New York State Election Law

The New York State Election Law provides that candidates for a party nomination at a primary election may gain access to the ballot by collecting the requisite number of signatures on a "designating petition." N.Y. Elec. L. § 6–118. Each sheet of a designating petition must be signed by a witness. N.Y. Elec. L. § 6–132(2). Under state law, individuals eligible to witness the signing of a petition are those who, at the time, are eligible to vote in New York and are enrolled in the same political party as eligible petition signers. *Id.* (The additional requirement of Section 6–132(2) that witnesses reside "within the political subdivision in which the office or position is to be voted for" was struck down in the *Lerman* case). The Election Law also provides that any party county committee "may prepare rules for govern-

ing the party within its political unit." N.Y. Elec. L. § 2–114.

### The Parties

The plaintiffs are candidates who sought access to the September 11, 2001 Democratic Party primary for New York City Council seats in districts in Kings County and wanted to use Democratic Party members living outside of those districts as petition witnesses in their efforts to get on the primary ballot; enrolled Democrats who wanted to serve as petition witnesses for candidates running for office in Kings County outside of their districts; and an enrolled Democratic voter in Kings County. The defendants are the KCDCC, its Executive Committee, and its chairperson, Jeffrey C. Feldman. The KCDCC is the official Democratic Party organization for Kings County, created and existing pursuant to New York Election Law, Section 2–104. Pursuant to stipulation, plaintiffs dismissed from the suit the New York City Board of Elections and its nine commissioners.

Plaintiffs seek declaratory and injunctive relief against the KCDCC's petition witness residency Rule. As a result of that Rule, some supporters of the plaintiff political candidates, who wished to witness petitions on their behalf, were disqualified by the Rule from doing so. That is, even if potential witnesses satisfied the requirements of N.Y. Elec. L. § 6–132, they could not witness petitions unless they also met the additional residency requirement of the Rule. It is not disputed that, as a result, the Rule affected candidates' ability to gain access to the primary ballot. Plaintiffs acknowledge that the KCDCC plays no role in reviewing candidate petitions, and thus cannot enforce the Rule directly. However, it is undisputed that candidates and others could challenge petitions witnessed by registered party members residing in other districts as invalid

under the Rule by filing written objections with the City Board of Elections. *See* N.Y. Elec. L. § 6–154.

### Procedural History

On May 24, 2001, plaintiffs filed their complaint in this court, along with a proposed order to show cause seeking preliminary injunctive and declaratory relief under 42 U.S.C. § 1983 claiming that the Rule adopted by the KCDCC violates the First and Fourteenth Amendments to the United States Constitution. An order to show cause why an order should not issue enjoining defendants from implementing and enforcing the Rule and declaring it unconstitutional was signed on May 25, 2001. On May 30, 2001 both sides appeared on the order to show cause. On that date, defense counsel submitted an affidavit prepared by defendant Jeffrey C. Feldman, the Executive Director of the KCDCC, stating that a meeting of the Executive Committee had been convened at 2:00 p.m. on May 30, 2001, "notice therefor having been given on May 23, 2001," and that, at that meeting, the Executive Committee, "by a majority vote of a quorum of members, did repeal" the Rule. Then, on May 31, 2001, based upon defense counsel's representations that under no circumstances would the KCDCC reinstate the Rule during the 2001 elections, this court dismissed plaintiffs' motion for a preliminary injunction without prejudice as moot. *See* Order of May 31, 2001.

Efforts to settle the litigation in its entirety foundered when the KCDCC would not agree to make a permanent commitment not to reinstate the petition witness residency requirement contained in the Rule at any time. Presently before the court are the parties' motions for summary judgment. The material facts are undisputed.

Plaintiffs argue that, under *Lerman*, the Rule is unconstitutional, and they seek at-torneys' fees. Defendants make no effort to distinguish the Rule from the provision of the Election Law that was struck down in *Lerman* other than to argue that they are not state actors. They also seek summary judgment, and oppose attorneys' fees, on the ground that the action is moot since they have repealed the Rule.

### Lerman v. Board of Elections

In *Lerman v. Board of Elections*, the Court of Appeals for the Second Circuit held that the political subdivision residency requirement for petition witnesses, contained in New York Election Law, Section 6–132(2), violated the First and Fourteenth Amendments to the United States Constitution. Like the KCDCC Rule, this requirement provided that candidate petition witnesses must be residents of the same political subdivision in which the candidate was running for office. All signatures on petitions witnessed by individuals living in other districts were disqualified, even if the witnesses were registered voters and enrolled members of the party.

The Court held that the requirement directly restricted "core political speech" as opposed to the mere "mechanics of the electoral process," and that therefore it would violate the First and Fourteenth Amendments unless it satisfied strict scrutiny and was narrowly drawn to advance a compelling government interest. *Lerman*, 232 F.3d at 146. The court noted that such exacting scrutiny would be required even if the requirement were viewed as an electoral process regulation rather than as core political speech, because it severely burdened political speech and political association by drastically reducing the number of persons available to circulate petitions. *Id.* at 146. The Court found that the petition witness residency requirement failed strict scrutiny because it did not bear even a rational relationship to any of the three justifications offered in its de-

fense, "let alone the narrowly tailored relationship that strict scrutiny demands." *Id.* at 149. The three justifications rejected by the court were (1) ensuring integrity and preventing fraud in the electoral process; (2) ensuring that candidates demonstrate a sufficient degree of support before their names go on the ballot; and (3) ensuring that non-residents not impose the cost of a primary on the district. *Id.*

**The Rule**

*Lerman* was decided on November 9, 2000. On February 22, 2001, the KCDCC, adopted the Rule at issue in this case. The stated purpose of the Rule is "to maintain discipline and comity among members of the Party; and to prevent members from participation in elective contests in which they are not legally permitted to vote." *See* Rules For the Gov't of the KCDCC, art. VIII, § 6(a). The Rule provides that "[n]otwithstanding any inconsistent or contrary law, ordinance, regulation, practice or governmentally sanctioned procedure, members of the Party shall only be permitted to sign, subscribe and witness Democratic Party Designating Petitions within the confines of the respective districts in which they are enrolled to vote as members." *Id.* § 6(b). It further provides that "[n]o member, acting solely in their [sic] capacity as a member of the Party, may ... witness any instrument which has the legal effect of causing a member of the Party from [sic] appearing on the Ballot of any Primary, General, or Special Election" in a district where the member is not domiciled. *Id.* at § 6(c). According to the Rule, use of a Party member from another district as a petition witness will serve to disqualify all of the signatures on the petition: "Petitions subscribed by Party members who are ... non-domiciliaries of such district ... shall be void and of no effect in rela-

tion to candidacies within district(s) wherein the member is not formally enrolled." *Id.* at § 6(e).

The Rule adopted a district-based definition of party membership, under which "[m]embers of the Democratic Party in Kings County shall be deemed members within the respective Assembly, Senate, Congressional, City Council, Civil (Municipal) Court and Community School Board District wherein they maintain their domicile." *Id.* at § 6(c). The effect of this party membership definition is to make party members ineligible under state law to witness petitions in districts where they do not reside, since Section 6–132(2) of the New York Election Law requires that petition witnesses be party members.

Defendants do not dispute that, in effect, the KCDCC Rule reinstates the Election Law provision struck down in *Lerman* and that its effect on candidates seeking ballot access and on potential witnesses to petitions is the same.

**Mootness**

 As the Supreme Court recently stated in *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 609, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001):

> "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (internal quotation marks and citation omitted).[1]

---

**1.** Defendants claim that the applicable stan- dard is whether the case falls within the ex-

Here, although the defendants have repealed the Rule for the last primary election, their papers make clear their interest in reenacting it. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n. 11, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) (finding challenge to repealed provision of city ordinance not moot where city intended to reenact the provision). Nor does it matter that the defendants "do not question the current state of the law under *Lerman*," Goldberg SJ Decl. ¶ 28, since they further state that they "do not believe that they should be precluded from enacting rules in the future if *Lerman* and its holding are reversed through judicial or legislative intervention." *Id.* at ¶ 27. (footnote omitted). *See United States v. New York City Transit Auth.*, 97 F.3d 672, 676 (2d Cir.1996) (noting, in support of a finding that the action was not moot, that defendant contemplated returning to the challenged policy if favorable precedent were developed in similar cases against other employers). It is undisputed that some members of the KCDCC "still believe in a residency type rule ..." Goldberg SJ Decl.¶ 27, and that the defendants have made no commitment not to reenact the Rule or something equivalent. *See* Transcript of May 30, 2001 at pages 10—12. *See Desiderio v. National Ass'n of Securities Dealers*, 191 F.3d 198, 202 (2d Cir.1999) (noting, in support of a finding of lack of mootness, that "firms who are members of the NASD may have an interest in lobbying to reimpose" the challenged rule). In addition, there is no reason to

believe that any different legal or factual issues will be presented if the court were to wait for the Rule or its equivalent to be reenacted. *Cf. Associated General Contractors v. City of New Haven*, 41 F.3d 62, 66 (2d Cir.1994); *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir.1992).

Thus, it is clear that defendants' conduct in effecting the repeal of the Rule only hours before the court was scheduled to hold a preliminary injunction hearing was an attempt to avoid judicial resolution of the controversy and not the type of voluntary cessation of challenged activity that calls for the court to stay its hand. *See New York City Transit Auth.*, 97 F.3d at 676 (finding it significant that the change of policy was instituted on the eve of the lawsuit); *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir.1996) (noting, in upholding finding of mootness, that there was nothing to indicate that defendant's voluntary cessation of the challenged activity occurred "merely to avoid judicial scrutiny").[2] Nor does anything defendants have done or said subsequent to the repeal of the Rule for the 2001 primary amount to a voluntary cessation of the challenged conduct warranting dismissal of the action. They have not established the voluntary cessation of the challenged conduct beyond the last primary.

### State Action

■ The defendants have acknowledged that, under *Lerman*, "this Rule is not enforceable." Transcript of May 30, 2001, pp. 11–12. They argue, however, that they

---

ception to the mootness doctrine for cases "capable of repetition, yet evading review." Defendants are in error and, in any event, the "capable of repetition, yet evading review" standard is no benefit to defendants, since, if the latter doctrine were the applicable one, the requirements of the exception have been met, as the Court of Appeals found they had been met in *Lerman*, 232 F.3d at 141, where

the primary election that had been the focus of the lawsuit was over.

**2.** Defendants note that they called a meeting at which the repeal was effectuated prior to the filing of the lawsuit; however, that occurred in direct response to a communication from plaintiffs' counsel informing defendants' counsel that a suit was imminent.

are not subject to a claim under 42 U.S.C. § 1983 because they are not state actors.

Under the principles of the white primary cases, despite the voluntary, private nature of the Democratic Party, the action of the KCDCC in enacting the Rule clearly constitutes state action making the defendants subject to a claim under 42 U.S.C. § 1983. *See Smith v. Allwright,* 321 U.S. 649, 660, 663–65, 64 S.Ct. 757, 88 L.Ed. 987 (1944); *Terry v. Adams,* 345 U.S. 461, 466–69, 73 S.Ct. 809, 97 L.Ed. 1152 (1953). As the Supreme Court recently stated, in *California Democratic Party v. Jones,* 530 U.S. 567, 573, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000), in describing the white primary cases, "when a State prescribes an election process that gives a special role to political parties ... the parties' discriminatory action becomes state action...." Indeed, the Second Circuit, in *Rockefeller v. Powers,* 74 F.3d 1367, 1374 (2d Cir.1996), held that the signature requirement for a party primary is state action even where the party merely selected between two alternative signature requirements authorized by the State. *See Montano v. Lefkowitz,* 575 F.2d 378, 383 n. 7 (2d Cir.1978) ("when the state grants political parties the right to nominate candidates and then gives those nominees special access to the ballot, the parties' procedures constitute state action" even where race is not involved). Thus, although political parties themselves have certain First Amendment associational rights, *see e.g. Jones,* those rights do not allow the political parties to engage in conduct, directly related to ballot access, that would be unconstitutional if done by the State. In *Jones,* California's blanket primary was invalidated because it burdened the party's associational rights by allowing voters not associated with the party to vote in its primary. Here, in contrast, state law protects the party's associational interest by requiring that petition witnesses and signers be enrolled party members, *see* N.Y. Elec. L. § 6–132(1)–(2), and the KCDCC seeks to distinguish among duly enrolled party members, not between members and nonmembers.

Defendants argue that the Rule merely constitutes the "expression" of a private association because there is no state enabling act permitting the KCDCC to enact such a rule, and the plaintiffs have dismissed from the lawsuit, without prejudice, the New York City Board of Elections. As a result, they argue, there is no entity which could sanction a candidate for violating the Rule. These arguments are unpersuasive.

To begin with, the Rule is not a mere expression of opinion. Plaintiffs have not suggested that defendants cannot freely discuss and urge the value of a residency requirement. What they complain of is the enactment of a Rule which was intended to, and did, affect the ability of candidates to obtain the petitions necessary to gain ballot access by burdening core political speech.

Insofar as defendants argue that the lack of express legislative authorization for their enactment of the Rule points to their not being state actors, they misapprehend the reach of Section 1983. Whether or not there is a state enabling act as to the Rule, indeed, whether or not the Rule is lawful under state law, the defendants were clearly acting under *color of* state law in enacting a Rule that purported to restrict the ability of candidates for state elections to obtain the petition signatures required by state law for access to the primary ballot. The suggestion that, because the Rule was not self-enforcing, that is, that the KCDCC had no direct authority to enforce the Rule (which, rather, would be enforced by the NYC Board of Elections, if someone challenged one of the plaintiffs' petitions) does not shield the KCDCC,

which had as its goal, in enacting the Rule, the restriction of petition witnesses based on residency. The undisputed effect of the Rule on candidates in the 2001 election was to make it significantly more difficult for many Democratic Party candidates to gain access to the primary ballot. Had plaintiffs violated the Rule and used out of district supporters as petition witnesses, their candidacies would have been imperilled by the serious risk of postpetition challenges by those who sought to enforce the Rule.

As for the dismissal of the Board of Elections, it was not the Board of Elections that enacted the challenged Rule. And if the KCDCC is enjoined from reenacting a petition witness residency requirement, plaintiffs contemplate no need to seek relief from the Board of Elections. Even if it were necessary to obtain an order against the Board to effectuate complete relief from the Rule, plaintiffs could reinstate the Board as a defendant.

In sum, the defendants, in enacting the Rule, undisputably were attempting to override the teachings of *Lerman*, which found that the petition witness residency requirement severely and unconstitutionally burdened First Amendment-protected political speech and association rights. Defendants offer no sound basis for treating their conduct in enacting a Rule virtually identical to the law invalidated in *Lerman* as entitled to any different analysis from that employed in *Lerman*. And their claim that they were not state actors, in enacting the Rule, is rejected.

### Declaratory and Injunctive Relief

The plaintiffs, having established their right to relief, are entitled to a declaratory judgment that the Rule violates the First and Fourteenth Amendments to the United States Constitution and to a permanent injunction. Their motion for summary judgment is granted, and defendants' mo-

tion for summary judgment is denied. A declaratory judgment and permanent injunction will issue.

### Attorneys' Fees and Costs

■ In *Buckhannon Bd. and Care Home, Inc., supra*, the Supreme Court held that the term "prevailing party" in the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3613(c)(2), authorizes an award of attorney's fees only where there exists a "corresponding alteration in the legal relationship of the parties," and it rejected the "catalyst" theory of fees. *See Buckhannon*, 532 U.S. at 605, 121 S.Ct. 1835. This holding is applicable to cases such as this where fees are sought under 42 U.S.C. § 1988. *See id.* at 602–03 and n. 4, 121 S.Ct. 1835; *N.Y. State Federation of Taxi Drivers v. Westchester County Taxi and Limousine Com'n*, 272 F.3d 154 (2d Cir.2001). Therefore, in order to be a prevailing party, "one must either secure a judgment on the merits or be a party to a settlement agreement that is expressly enforced by the court through a consent decree." *J.C. v. Reg'l Sch. Dist. 10*, 278 F.3d 119, 123 (2d Cir.2002) (*quoting Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835). It is not sufficient that a defendant voluntarily change its behavior, because a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.*

■ Defendants argue that their voluntary repeal of the Rule precludes an award of attorneys' fees to the plaintiffs. As discussed above, in the discussion of mootness, defendants' repeal of the Rule did not moot this action. Nor did it eliminate the need for plaintiffs to pursue the action to final judgment, which they have now obtained. Without the issuance of a permanent injunction against the KCDCC, it

would be free to re-enact the Rule because it has not entered into any legally enforceable agreement not to do so. Only because of this legal action and the judgment in favor of plaintiffs has the legal relationship between the parties permanently been altered in plaintiffs' favor by legally precluding the KCDCC from re-enacting the Rule. Since plaintiffs are prevailing parties under 42 U.S.C. § 1988, they are entitled to reasonable attorney's fees. They should serve and file their application for fees by May 7, 2003; defendants should serve and file any opposition to the amount sought by June 18, 2003; and plaintiffs may serve and file a reply no later than June 25, 2003.

**SO ORDERED.**